1  STEPHEN S. SMITH (SBN 166539)
   SSmith@GreenbergGlusker.com
2  JULIA HAYE (SBN 198138)
   JHaye@GreenbergGlusker.com
3  DAN D. NABEL (SBN 266320)
   DNabel@GreenbergGlusker.com
4  GREENBERG GLUSKER FIELDS CLAMAN &
   MACHTINGER LLP
5  1900 Avenue of the Stars, 21st Floor
   Los Angeles, California 90067-4590
6  Telephone: 310.553.3610
   Fax: 310.553.0687

   Attorneys for Defendant
8  K2 Network, Inc., a California corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| MGAME CORPORATION, a corporation organized under the laws of the Republic of Korea,, <br><br> Plaintiff, <br><br> v. <br><br> K2 Network, Inc., a California corporation, <br><br> Defendant. | Case No. CV 12-02525 JST (ANx) <br><br> [Assigned To: <br> Hon. Josephine Staton Tucker <br> Courtroom 10A] <br><br> **DECLARATION OF JAMES KAVANAGH IN SUPPORT OF K2 NETWORK INC.'S OPPOSITION TO MGAME'S APPLICATION FOR PRELIMINARY INJUNCTION** <br><br> Hearing <br> Date: April 30, 2012 <br> Time: 10:00 a.m. <br> Dept./Place: 10-A <br><br> Action Filing Date: March 23, 2012 |
|---|---|

Kavanagh Decl. ISO K2's Opp. to Application for Preliminary Injunction
47871-00002/1825149.1

# DECLARATION OF JAMES KAVANAGH

JAMES KAVANAGH declares:

1. I am a consultant for K2 Network, Inc. ("K2") and was K2's Chief Financial Officer from September 2007 to October 2011. The facts stated herein are known to me personally and, if called as a witness, I could and would testify competently to these facts under oath.

2. Attached as Exhibit A is a deal memo (the "Deal Memo") between K2's former president, Chris Hwang, and Mgame Corporation ("Mgame") dated April 29, 2009, regarding the establishment of a "NEWCO" entity which later became known as "Game Café Services," ("GCS"). The Deal Memo explains, among other things, how K2 would change the way it paid royalties to Mgame for the sale of Electronic Serial Numbers (a/k/a "ESNs" or "EPINs").

3. Chris Hwang provided this Deal Memo to K2 after negotiations with Mgame. The Deal Memo was used to clarify the basis for royalty payments to Mgame for ESN sales that would run through GCS, since GCS would undertake the sales efforts and related costs and would remit a portion of such sales to K2. One of the stated purposes of establishing GCS was to eliminate K2's deduction of 10% of the revenue it received from the sale of ESNs upon which it then paid royalties to Mgame. Prior to 2009, K2 had incurred costs associated with selling the EPINs directly to resellers and the public. With the creation of GCS, K2 would no longer incur such costs. Mgame therefore wanted to eliminate the 10% revenue deduction because it felt that the deduction would now be a "phantom cost." This elimination of the 10% deduction cost that K2 was taking is embodied in the parties' June 4, 2009 Game License Extension Agreement in Article 6, subparagraph i.

4. The Deal Memo is signed by Mgame's Chief Executive Officer and shows the details of the calculation of royalties on ESN sales and the proposed change. Item 5(A)(i) shows the agreed-to "NEW CALCULATION" and, for

1
Kavanagh Decl. ISO K2's Opp. to Application for Preliminary Injunction
47871-00002/1825149.1

clarity, also shows the previous status quo calculation in 5(A)(ii).

5. The total ESN sales are the same in both calculations. Nothing was done in the Deal Memo (or in the June 4, 2009 Extension) to change the definition of sales upon which royalty was based, which has been, from the first agreement, and through all agreements since, cash actually received and deposited into the bank account of K2.

6. In calculation 5(A)(i), the ESN sales of $546,548 is multiplied by 40% (the Mgame royalty rate) to arrive at a royalty payment to Mgame of $218,700 for ESNs.[1]

7. The remainder of the calculation is unchanged from the status quo, with the credit card sales of $402,098 being reduced by charge backs, to arrive at net credit card sales of $388,928. The net credit card sales of $388,928 are then reduced by 10% of such amount (a contractual provision Mgame wanted to eliminate for ESN sales) and the resultant 90% of net credit card sales, *i.e.*, $350,026 (which it appears Mgame has rounded to $350,000 for simplicity), is multiplied by 40%. The result is that the royalty due to Mgame from credit card sales is $140,014. Mgame then added the calculated royalty for ESNs of $218,700 and the calculated royalty of $140,014 for credit card sales together to get to a total royalty of $358,713 (again, an apparent rounding error by Mgame), *i.e.*, the new royalty under their revised calculation.

8. In the calculation of 5(A)(ii)—which represented the status quo at the time—Mgame simply shortcut the calculation to show that <u>all</u> net revenue, including ESN sales, was subject to the 10% reduction, and Mgame shows the amount of the 10% reduction, *i.e.*, $54,548. The remainder of the calculation is not shown; however, the royalty statement for March 2009 is referenced in their calculation as a basis for the calculation. A copy of the March 2009 Knight Online

---

[1] This amount should be $218,620, however, Mgame's calculations have often been incorrect.

Revenue Sharing Statement is attached as Exhibit B. It shows that the total royalty for that month that K2 paid to Mgame was $334,452. This is how Mgame arrived at the number of $334,000 at line 5(A)(ii)(2). The ESN sales on the March 2009 statement (Exhibit B) are $546,748 as shown on the second page under "ESN adjustments," "Plus: ESN Purchase [A]."

9. In the Deal Memo, the "DIFFERENCE" line on 5(A)(iii), shows the total difference that would result between the new Mgame calculation as set forth in 5(A)(ii) and the old calculation, *i.e.*, amounts actually paid to Mgame for the March 2009 royalty statement rounded to $334,000. The difference is $23,000.[2]

10. This Deal Memo was presented and explained to us at K2 (in Irvine) during May 2009 by Chris Hwang, prior to K2's entering into the GCS Operating Agreement and the 2009 Game License Extension Agreement, in order to show Mgame's agreement to the new royalty calculation.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 5 day of April, 2012, at Irvine, California.


JAMES KAVANAGH

---

[2] The actual difference should be $21,862 ($54,655 x 40%) which is the 10% deduction on ESN sales allowable under the status quo multiplied by 40%, (the Mgame royalty rate); because they did not take the time to get the exact numbers off the March 2009 royalty statement, rounding makes the differences slightly off. The slight difference in numbers is not surprising as this is the usual modus operandi for Mgame.